UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ALEBAMON MARINE SERVICES, LLC                    CIVIL ACTION

v.                                               NO. 14-2453

OCEAN MARINE CONTRACTORS (SCRAP DIVISION), LLC   SECTION "F"

ORDER AND REASONS

Before the Court are two motions by the defendant: motion to add or amend the findings of fact, and motion new trial. For the reasons that follow, the motion to add or amend findings of fact is GRANTED IN PART and DENIED IN PART, and the motion for a new trial is DENIED.

Background

This case was tried to the Court without a jury on May 11, 2015. The central issue at trial was the terms of an oral modification to a written contract to buy and sell vessels to allow for delayed partial payment. In June 2013, Alebamon Marine Services, LLC and Ocean Marine Contractors (Scrap Division), LLC entered into a written contract whereby Alebamon agreed to sell and OMC agreed to buy six vessels for $1.6 million, to be delivered to OMC in Trinidad and then towed to Louisiana. Only two of the six vessels made it from Trinidad to Louisiana for scrapping.

OMC was obligated to pay an initial 10% deposit and the

1

balance of the purchase price within 30 days thereafter, *i.e.* by July 30, 2013.  By August, OMC had paid all but $300,000, and that $300,000 is the subject of this case.  OMC contended at trial that Alebamon had orally agreed to defer receiving the remaining $300,000 until all six vessels were in Louisiana.  Alebamon responded that it did agree to defer payment, but only for 90 days, and that this was in exchange for an 18% interest payment.

At trial, Adam Hargrove, the president and owner of Alebamon and the only witness who testified as to the 18% interest rate, testified that the parties agreed orally to defer payment for 90 days at a 12% interest rate for those 90 days, and "then an 18% default after that 90-day period."  He repeated these terms several times, and counsel for Alebamon stated in argument that Alebamon "request[ed] judgment in its favor and against Ocean Marine for the principal amount, $300,000, with interest at 12% for the first 90 days until November 7, then jumping up to 18%."  Hoby Dillon, who worked as OMC's Chief Financial Officer and whom the Court found incredible, testified that no such agreement was made.

The Court ruled from the bench in favor of Alebamon, stating as to the quantum owed to Alebamon: "The plaintiff is entitled to the prejudgment interest, I believe, in the amount of $54,000 calculated, I believe, every three months beginning November 7, 2013, and the Court taxes all costs to the defendant."  The Court subsequently entered judgment in favor of Alebamon and against

Ocean Marine in the amount of $660,000, plus post-judgment interest at the prevailing federal rate and plaintiff's taxable costs. The award of $660,000 was calculated as follows: the principal amount of $300,000; plus prejudgment interest of $36,000 (simple interest of 12% on the principal amount for the 90-day period ending November 7, 2013); plus prejudgment interest of $324,000 (simple interest of 18% on the principal amount ($54,000) every 90 days from November 8, 2013, through the date of the trial).

OMC now moves to add or amend the findings of fact to correct, among other alleged errors, the interest rate imposed. It also moves for a new trial on these issues.

**I. Motion to Add or Amend Findings of Fact**

*A.*

Federal Rule of Civil Procedure 52(b) allows the Court to amend its judgment or add or amend findings of fact. "The purpose of motions to amend is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence." Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986). "This is not to say, however, that a motion to amend should be employed to introduce evidence that was available at trial but was not proffered, to re-litigate old issues, to advance new theories, or to secure a rehearing on the merits." Id.

*B.*

OMC contends that the judgment contains manifest errors because: (1) the record is devoid of any evidence of Dillon's actual authority to bind OMC to the oral modification; (2) the Court improperly found Dillon to be an employee of OMC; (3) the Court erred in finding Dillon's testimony was rehearsed; (4) the Court improperly concluded that the parties entered into the oral modification; (5) the Court incorrectly concluded that the oral modification imposed a default interest rate of 18% every 90 days; and (6) the Court should amend its findings of fact and conclusions of law to accommodate newly discovered evidence, including two affidavits, an IRS form 1099, and a deposition transcript.

The majority of these issues do not warrant lengthy discussion; it is well settled, for example, that it is within the trial court's discretion to make credibility determinations as the finder of fact. See Fed. R. Civ. P. 52(a); Canal Barge Co., Inc. v. Torco Oil Co., 220 F.3d 370, 375 (5th Cir. 2000). Observing the evidence at trial, and the witnesses' demeanor, the Court had the discretion to disbelieve Dillon's testimony and to credit Hargrove's. Questions of impeachment, rehearsed testimony, and memory were to be raised at trial and will not be re-litigated by way of post-trial motions. Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990).

The defendant also contends that there was no evidence that

4

Dillon had the authority to bind OMC.  The question of Dillon's authority was a central focus of the trial and has been thoroughly litigated.  The evidence at trial showed that Dillon, as OMC's CFO, had the authority over OMC's finances and had the authority to confer with Alebamon about a modification to the contract.  But the defendant submits what it calls new evidence: an IRS form showing that Dillon was not paid directly by OMC, and affidavits from a witness who testified at trial and one who did not.  None of this is new evidence that could not have been discovered previously.

The evidence at trial, however, does not support the interest rate referenced in the Judgment, and this calculation was in error.  Hargrove testified that the interest was to be at 12% for 90 days, and then, if payment had not been received after those 90 days, the interest rate would go up to 18%.  This statement was never followed with "for every 90-day period thereafter."  In reliance on Alebamon's pretrial papers, however, the Court imposed such a rate, adding $54,000 to Alebamon's damages for every 90-day period from November 2013 to the date of trial.  This finding is contrary to the evidence and results in interest exceeding the principal.

The defendant, focusing on the alleged illegality of the interest rate and credibility determinations that it believes warrant additional findings of fact, fails to identify the appropriate interest rate.  Absent evidence of the custom and practice in the industry of identifying an 18% interest rate

5

without further specification, the Court cannot determine the correct rate.

## II. Motion for New Trial

*A.*

Federal Rule of Civil Procedure 59(a)(1) allows the Court to grant a new trial. The Rule contemplates a range of grounds that may warrant a new trial, including a prejudicial error of law, excessive damages, newly discovered evidence, or unfairness. A new trial is an extraordinary remedy that should only be granted in limited circumstances. Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004). Rule 59 motions should not be used to relitigate old matters, raise new arguments, or submit evidence that could have been presented earlier in the proceedings. Simon, 891 F.2d at 1159. The movant on a Rule 59 motion bears the burden of showing harmful error, and the decision to grant a new trial is left to the trial court's discretion. Del Rio Dist., Inc. v. Adolph Coors Co., 589 F.2d 176, 179 & n.3 (5th Cir. 1979).

*B.*

The issues raised in the motion for a new trial are, for the most part, the same contained in the motion to amend the findings of fact,[1] and they fail for the reasons explained. Because the

---

[1] The defendant also contends that the deferred payment was in fact a loan and thus Dillon required express authority to enter into it, and the interest rate is illegal under Louisiana law. The contract at issue, however, was always one to buy and sell. See Motes v. Van Wagner, 188 So. 2d 704, 705 (La. Ct. App. 4 Cir. 1966)

interest rate can be cured without resort to the extraordinary remedy of a new trial, there is no such need.

Thus, IT IS ORDERED that the motion to amend the findings of fact is hereby GRANTED IN PART as to the interest rate and DENIED IN PART as to all other issues.  IT IS FURTHER ORDERED that the parties submit simultaneous supplemental briefing as to the interest rate no later than September 9, 2015.  Failure to do so will result in the Court issuing an amended judgment in which the damages are calculated as follows: $300,000 principal; plus 12% for the 90-day period in 2013 ($36,000); plus 18% simple, annual interest thereafter ($81,221.92); for a total of $417,221.92.  Such amended judgment should be submitted by Alebamon within the same time frame, unless there is supplemental briefing.

IT IS FURTHER ORDERED that the motion for a new trial is DENIED.

New Orleans, Louisiana, September 2, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

(finding that the maximum allowed interest on a loan did "not apply to a bona fide credit sale of property.").